### MAGEL v. UNION TRUST CO.

1. HUSBAND AND WIFE—DISMISSAL OF DIVORCE SUIT LEGAL CONSIDERATION FOR HUSBAND'S AGREEMENT TO PAY MONEY.

    Dismissal of wife's divorce suit and resumption of marital relations by her is a legal consideration on her part for her husband's agreement to pay money, settle property upon her, or do some other thing for her material benefit.[1]

2. SAME—POST-NUPTIAL CONTRACT CONSTRUED.

    Husband's post-nuptial contract to prevent loss of wife's "undivided one-half interest" in the home held by them by the entireties, through default in a certain mortgage thereon, is construed as intending to protect whatever interest she had in it from loss by reason of default in said mortgage.[2]

3. SAME—CONTRACT—PERFORMANCE—ESTATES OF DECEDENTS.

    Husband's agreement to protect his wife's interest in the home against default in a $10,000 mortgage thereon was

---

[1]Contracts, 13 C. J. §§ 204, 408; Husband and Wife, 30 C. J. § 201 (Anno); [2]Husband and Wife, 30 C. J. § 211.

On validity of agreement between husband and wife to resume marital relations and to discontinue divorce suit, see note in 60 L. R. A. 409.

performed, where he made all payments due on the mortgage up to the time of his death, carried $10,000 of life insurance with his wife as beneficiary and fully performed all other obligations imposed upon him by said agreement, and therefore there was no surviving claim against his estate by reason of said agreement, when the mortgage became at default after his death.[3]

Error to Wayne; Merriam (De Witt H.), J. Submitted June 23, 1926. (Docket No. 4.) Decided July 22, 1926.

Caroline J. Magel presented a claim against the Union Trust Company, executor of the last will of Elmore J. Magel, deceased, under a post-nuptial agreement. The claim was disallowed by the commissioners, and plaintiff appealed to the circuit court. Judgment for defendant. Plaintiff brings error. Affirmed.

*U. R. Loranger,* for appellant.

*John E. Pokorny,* for appellee.

STEERE, J. This litigation arose over two claims against the estate of Elmore J. Magel, deceased, first presented by plaintiff to the commissioners on claims in the probate court, disallowed in that court and taken to the circuit court of Wayne county on appeal. There one of the claims is said to have been allowed and is not involved here. The case was tried before the court without a jury. Aside from proper presentation of the claims and objections to them, there are no formal pleadings. The facts are practically undisputed. Plaintiff, Caroline J. Magel, is the widow of Elmore J. Magel, who died on October 9, 1923.

On April 24, 1923, plaintiff filed a suit for divorce against her husband, Elmore. No answer was filed

---

[3]Husband and Wife, 30 C. J. § 211.

by him, but on the following July 2d the parties, with co-operation of their attorneys, came together and a stipulation was filed reciting that they had reached an amicable settlement and providing for withdrawal of her suit.    Prior to the withdrawal they entered into a written agreement settling their differences. It begins with a recital of their reconciliation, and states the parties have agreed to resume marital relations on the conditions mentioned in the agreement, which are, so far as possibly pertinent here, as follows:

"4. To carry out a long cherished purpose, a new home has recently been purchased by defendant for the joint use of himself and wife at No. 1983 Edison avenue, Detroit, Michigan; the title to which shall be placed in the joint names of the parties hereto as husband and wife.

"5. It is understood that said home has been purchased subject to a mortgage of ten thousand dollars ($10,000) principal, running to . . . . . . . . . .; but that defendant shall make all required payments on said mortgage; and shall also pay all taxes and assessments on the property and maintain sufficient insurance to protect same against loss by fire; it being the intention that he shall do whatever may be necessary to prevent a loss of her undivided one-half interest in said property through default in or foreclosure of said mortgage, or any other mortgage that may be placed upon the property.

"6. It is further agreed that plaintiff shall contribute to the cost of acquiring said new home by joining defendant in the conveyance of a lot now jointly owned by her and him, on Boston boulevard, Detroit.    *    *    *

"8. Defendant is to pay plaintiff the sum of five thousand dollars ($5,000) he owes her for money paid him, and give his notes therefor payable in four months, with legal interest, one of said notes to be for one thousand dollars ($1,000), and the other for four thousand dollars ($4,000).    On the payment of said note of four thousand dollars ($4,000), plaintiff agrees to re-invest the money in high grade securities.

"9. Defendant is to reinstate plaintiff as beneficiary

in certain policies of insurance on his life for the minimum amount of ten thousand dollars ($10,000) and for such additional amounts as such policies may have heretofore been payable to her as beneficiary; he agrees to pay the premiums upon all said life insurance policies so as to keep the same valid as long as he shall live, or until such time as the policies may become fully paid.

"10. Defendant agrees to pay the balance of plaintiff's attorney fee, five hundred dollars ($500), on or before July 7, 1923."

The title to the home which had been recently purchased at a price of $27,000 was by proper conveyances and payments so adjusted that it stood in their names as husband and wife holding by entireties, subject to a $10,000 mortgage upon it, as their agreement provided; $10,000 of the purchase price was paid by conveyance to the grantor of an incumbered lot, which is stated in the contract as "jointly owned by her and him," but conceded by her counsel at the hearing to have stood in his name, she joining "in executing the mortgage for the purposes of releasing her homestead and dower."

Up to the time of his death deceased had performed all the obligations this settlement agreement imposed upon him. He left a will of which defendant was appointed executor, but what estate he left or how he disposed of it does not appear in the record. In any event, plaintiff, as his wife, had an enforceable interest in his estate to the extent provided by statute. At his death the home which they held by entireties became absolutely hers subject to the $10,000 mortgage. She insisted that his estate was obligated under his contract with her to keep up the payments which the $10,000 mortgage required until it was fully paid. This the executor denied. The probate and circuit courts both held that obligation ceased with his death and his estate was not holden for payment of the mortgage, which is the issue before us.

The law of domestic relations now recognizes as valid post-nuptial contracts of reconciliation where spouses have disagreed and separated and the wife has raised a divorce barrier between them. Dismissal of her divorce suit and resumption of marital relations by her is regarded as a legal consideration on her part for her husband's agreement to pay money, settle property upon her, or do some other thing for her material benefit (13 R. C. L. p. 1362).

In the instant case the wife dismissed her pending divorce suit and resumed marital relations with her husband in consideration of his doing the various things specified in the contract for her benefit, financial and otherwise. Her obligations were to simply drop her divorce suit and live with him as his wife. His agreement was not only to resume their marital relations, but in that connection to assume various financial as well as domestic obligations.

No claim is made that the contract was breached by either so long as he lived, and it is conceded that during his lifetime he fully performed all obligations imposed upon him by the contract but leaving at his death the undue, deferred payments on the $10,000 mortgage. After his death a semi-annual payment of $500 with interest fell due, which both plaintiff and the executor of deceased's estate refused to pay when notified by the mortgagee of the default, she insisting it was a claim against his estate imposed by an obligation he assumed during his life, which the executor denied. Foreclosure proceedings followed, primarily based on default in payment of the first installment and interest due on the mortgage of $740.67. The whole amount of the mortgage was declared due as authorized by its terms, and the property sold on foreclosure at public sale was bid in by the mortgagee and sheriff's deed given.

Before the equity of redemption expired, plaintiff sold the property, at what price the record does not

disclose, except the court states in its findings that she "suffered no loss of her interest but on the contrary has received or will receive more than the contract undertook to save for her." In the meantime she pressed her $10,000 claim against the estate of her husband, based on the provision in clause 5 of the contract that deceased would do "whatever may be necessary to prevent a loss of her undivided one-half interest in said property through default in or foreclosure of said mortgage."

Clause 5, standing alone, cannot be said to clearly express the full intent of the parties. It inaccurately describes her interest in the home as an "undivided one-half," and makes no provision for the contingency of death. As a tenant by entirety she held no undivided one-half interest in the property to be protected, but by fair interpretation it may be conceded that it was the intent to protect whatever interest she had in it from loss by reason of default in the $10,000 mortgage.

Plaintiff's counsel plants her claim solely on the provisions of clause 5 of the contract, standing alone, and urge application of the general rule that any contract which a deceased might have been compelled to perform had he lived is enforceable against his estate, and cites, as conclusive of her right to recover by claim in the probate court against deceased's estate, *Clark* v. *Davis*, 32 Mich. 154. In that case the widow claimed a surplus remaining after payment of all claims allowed against the estate, while Clark claimed it should be applied in payment, so far as it would go, of five promissory notes given by deceased in his lifetime secured by mortgage given by him on lands which descended to Clark as an heir-at-law. Those notes were direct obligations of deceased which admittedly survived directly against the estate, and the court held, in substance, that failure of the holder of the notes to

present and prove them as a claim, because satisfied with his mortgage security, did not preclude Clark from urging them for protection of his title. In the instant case there were no contractual relations between the mortgagee and Magel, who did not sign the note or mortgage, but only bought the property subject to it. The mortgagee held no claim it could enforce against his estate.

But without further following the technical contentions of counsel directed to clause 5, we are of opinion that a proper construction of this contract, taken in its entirety, leaves no surviving claim against deceased's estate. The contract was entered into by the parties with a single controlling object in view. Directed to that end, its various parts and material provisions are for a common purpose and interdependent, requiring where construction is necessary that they be construed together, in the light so far as furnished of surrounding conditions and circumstances at the time of making the contract.

Standing alone, clause 5 of the contract is inartistically drawn and incomplete, with no provision for the contingency of death. Its manifest intent and purpose was to protect her interest in the home against the $10,000 mortgage. By the terms of the contract he put her in condition to do so in the event of his death before he had fully paid it. He was a builder and contractor who had borrowed $5,000 of money from his wife. By clause 8 he agreed to see that it was paid within four months thereafter, and it is not denied that he so provided before he died.

In clause 9 he made provision for the contingency of his death, which was not taken care of before, as it easily might have been, by agreeing to reinstate plaintiff as beneficiary in certain policies of insurance on his life "for the minimum amount of ten thousand dollars" and for such additional amounts as such

policies had theretofore been payable to her as a beneficiary, indicating that he had carried insurance in her favor for more than $10,000 and was to reinstate the full amount he had previously carried. In construing the contract as a whole, that reference to $10,000 is entitled to be given some pertinent meaning. Evidently it was inserted for a purpose. It corresponds exactly to the amount of the mortgage on their home. It is a fair inference that the parties had that in mind when special reference to that amount was made requiring him to reinstate insurance for exactly that sum when he had carried a larger amount, and no other possible purpose is indicated than to supplement the provisions of clause 5. When the mortgage became at default after his death she had means available to pay the comparatively small amount then due from three apparent sources, the $5,000 which he had provided for payment to her, the $10,000, at least, of life insurance payable at his death, and her widow's interest which the statute gave her in his estate, whatever it might be. It can fairly be said that he did do whatever was necessary to prevent a loss of her interest in the home which became, upon his death, absolutely hers subject to the mortgage in question.

The judgment will stand affirmed.

BIRD, C. J., and SHARPE, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.